**In the United States District Court**
**For the Southern District of Texas**
**Galveston Division**

| | | |
|---|---|---|
| **Jay Rivera** | § | |
| **Plaintiff,** | § | **C.A. No.** |
| | § | |
| **v.** | § | |
| | § | **9(H) Admiralty** |
| **Kirby Corporation and** | § | |
| **Kirby Offshore Marine, LLC** | § | |
| ***In personam*** | § | |
| **M.V. Tarpon** | § | |
| ***In Rem*** | § | |

**Plaintiff Jay Rivera's**
**Original Complaint**

**To the Honorable Judge George C. Hanks, Jr.:**

Comes Now, Captain Jay Rivera ("Capt. Rivera" or "Plaintiff") and files this original complaint against *in personam* defendants Kirby Corporation and Kirby Offshore Marine, LLC and against *in rem* defendant *M.V. Tarpon* and would respectfully show the court as follows:

## I.
## Jurisdiction & Venue

This is an admiralty and maritime claim within the meaning of Article III, Section 2 of the United States Constitution; 28 U.S.C. §§ 1331, 1333; and rule 9(h) of the Federal Rules of Civil Procedure. Venue is proper in this district as Defendants have availed themselves of this district by directing its vessels to the ports of Galveston County, Texas, and the injuries to Plaintiff occurred while on board the *M.V. Tarpon*

while the vessel was in the territorial waters offshore Corpus Christi, Texas, which is located in this judicial district. Furthermore, Defendant Kirby Corporation's headquarters are located in this judicial district.

**II.**
**Parties**

1. Plaintiff Capt. Jay Rivera is an individual Citizen of the State of Texas who currently resides at 16101 Cuttysark St Corpus Christi, TX 78418, which is within this District.

2. *In Personam* defendant Kirby Corporation is a foreign corporation which regularly engages in business in the state of Texas and maintains its corporate headquarters in Houston, at 55 Waugh Drive, Suite 1000, Houston, Texas 77007, and may be served with process with its registered agent, Corporation Service Company d/b/a CSC-Lawyers Incorporating Service Company at 211 E. 7th Street, Suite 620 Austin, Texas 78701-3136.

3. *In Personam* defendant Kirby Offshore Marine, LLC is a foreign limited liability company which regularly engages in business in the state of Texas and maintains its corporate headquarters in Houston, at 55 Waugh Drive, Suite 1000, Houston, Texas 77007, and may be served with process with its registered agent, Corporation Service Company d/b/a CSC-Lawyers Incorporating Service Company at 211 E. 7th Street, Suite 620 Austin, Texas 78701-3136.

3. *In rem* Defendant *M.V. Tarpon* (official number 1231405) may be found wherever she is afloat and may be served with process either by way of her owners, managers and agents, or by citation to the vessel upon entering this judicial district.

## III.
## Background Facts

### A. Captain Jay Rivera – Aransas Corpus-Christ Pilot

5. Capt. Rivera is an Aransas-Corpus Christi Pilot and is licensed by the United States Coast Guard as a First Class Pilot and holds a commission from the State of Texas to conduct compulsory pilotage to vessels calling on Nueces County. *See generally* TEX. TRANSP. CODE 70.001 *et seq*.

6. Capt. Rivera has maintained his Texas pilotage commission for twelve-years. In order to serve as Texas state pilot, Capt. Rivera is also required to pass and maintain a United States Coast Guard first class pilot's license. *See* TEX. TRANSP. CODE § 61.011(a).

7. As part of Capt. Rivera's responsibilities as an Aransas-Corpus Christ Pilot, he is responsible for protecting the natural resources of the state of Texas by providing navigational guidance to the captains of the vessels who are required to use pilots aboard their vessels.

### B. M.V. Tarpon/DBL 76

8. The *M.V. Tarpon*, official number 7390923, is a seagoing towing vessel which comprises an articulated tug/barge unit ("ATB") when the vessel is affixed to, or "in the

notch" of, tank barge DBL 76.

9. On August 16, 2016, Capt. Rivera was dispatched to sail the ATB from the Port Aransas sea buoy to Oil Dock #11.

10. At approximately 4:00 p.m. boarded the ATB offshore Port Aransas from the pilot boat. As he had done thousands of time before, he boarded the vessel by climbing up the pilot ladder and onto the deck of the barge DBL 76. He was met by an able bodied seaman ("AB") who was apparently on his first hitch aboard the ATB. The AB then escorted Capt. Rivera to the stern of the barge where they both climbed down a set of inset ladder rungs built into the barge's skin, and onto the deck of the *M.V. Tarpon*.

11. Capt. Rivera was then escorted to the rear of the house of the *M.V. Tarpon*, where he was required to enter the interior of the *M.V. Tarpon* by climbing over a raised bulwark and through a watertight door. A true and correct photograph of the entrance to the *M.V. Tarpon's* house, or "fiddly" is shown below as well as a photograph of the bulwark and engine room access hatch on the interior of the house.




Photograph of the *M.V. Tarpon* "fiddly"



Photograph of the bulwark and engine room access hatch

12. As Capt. Rivera climbed over the bulwark, making use of the exterior and interior steps, he then stepped down onto the engine room access hatch.

13. Unbeknownst to Capt. Rivera, the edges engine room access hatch, which are not marked with any type of yellow tape warning of its hazard, are raised from the deck approximately two inches. The AB also failed to warn Capt. Rivera of this hazard.

14. As Capt. Rivera stepped onto the engine room access hatch, his left foot landed

on the raised edge of the engine room access hatch and his foot rolled off the raised edge causing him to fall to the deck. Capt. Rivera immediately felt a POP in his left foot and he believed he had simply rolled his ankle. Although he was in severe pain at the time, Capt. Rivera believed he could complete the task of bringing the vessel safely into port.

15. Upon arriving in the wheelhouse, Capt. Rivera informed the master of the *Tarpon* of his injury, and complained about the raised and unmarked deck area. Capt. Rivera asked for some ice for his rapidly swelling foot. He then made the transit from the sea buoy to Oil Dock #11 with ice on his foot, and in extreme pain.

16. Throughout the three hour transit, Capt. Rivera began to become more and more concerned that this was something more than a simple ankle sprain.

17. After completing the docking evolution, Capt. Rivera became concerned that he would not be able to safely disembark the vessel, and so he asked the line handlers who were assisting in mooring the vessel to help him off the *Tarpon* and to help carry him to his vehicle. Capt. Rivera then travelled to the Bay Area Hospital emergency room where he received X-rays.

18. Concerned that the extent of the damage could be permanent, Capt. Rivera was then seen by an orthopedic specialist, Dr. Dawn Grosser at South Texas Bone & Joint who diagnosed Capt. Rivera with a fracture of his fifth metatarsal of his left foot.

19. As a result of the injury, Capt. Rivera was required to wear an air-boot and use

a bone growth stimulator. Capt. Rivera, who is required by the United States Coast Guard to maintain physical competency to act as a pilot, was rendered physically incompetent as a result of his injury aboard the *M.V. Tarpon* on August 16, 2016.

20. Although, Capt. Rivera has now been deemed physically competent and has returned to his job piloting vessels, he will have to wear a carbon insert in his footwear for the remainder of his life, and the likelihood of re-injury to his foot is increased. In all likelihood, Capt. Rivera's work life will be shortened by this injury given the extreme nature of his job as a harbor pilot.

21. Capt. Rivera is seeking damages as a result of the negligence of Kirby Defendants. He is also seeking monetary damages against the *M.V. Tarpon in rem* under the theories of general maritime negligence and unseaworthiness premised upon the *Sieracki* seaman doctrine.

## IV.
## Claims:

### A. Negligence:

22. Capt. Rivera incorporates paragraphs 1-21 as if fully set forth herein.

23. On August 16, 2016 Kirby Offshore Marine, LLC as the operator of the *M.V. Tarpon*, was responsible for providing a safe means of ingress and egress to Capt. Rivera, and owed the duty of reasonable care under the circumstances.

24. The Kirby Defendants provided an untrained seaman to escort Capt. Rivera to the wheelhouse, and who failed to inform Capt. Rivera of the raised engine room

access hatch that he would have to transition over.

25. Additionally, the Kirby Defendants failed to sufficiently mark the hazard of the raised engine room access hatch cover with yellow tape which is the industry standard.

28. The Kirby Defendants, by and through the crew members aboard the *M.V. Tarpon*, neglected to warn Capt. Rivera of the dangerous and hidden nature of the raised engine room access hatch cover, and as a result, Capt. Rivera fell and was injured.

**B. Unseaworthiness-*Sieracki* Seaman:**

29. Capt. Rivera incorporates paragraphs 1-28 as if fully set forth herein.

30. At the time of Capt. Rivera's injury, he was aboard the *M.V. Tarpon* to perform pilotage services and to conn the vessel from the sea buoy to Oil Dock #11.

31. Pilotage is a traditional maritime activity that is critical to the safe navigation of ocean going ships and requires the localized knowledge of a duly licensed pilot to safely conn the vessel past the shoals, reefs and other submerged hazards in the ship channel.

32. Pilots, including Capt. Rivera, are not members of the crew of the vessel, but assist in the mission and safe navigation of the vessel.

33. Due to the relationship of Capt. Rivera to the *M.V. Tarpon*, the vessel (and its owners) owed to him the duty of a seaworthy ship under the doctrine of seaworthiness. *See Seas Shipping Co., Inc. v. Sieracki*, 328 U.S. 85 (1946).

34. The *M.V. Tarpon* was unseaworthy as that term is understood at law as the engine room access hatch cover was defectively designed, or engineered, or marked in such a way to not appraise anyone transiting it of its inherent danger, creating an unsafe condition aboard the vessel. Furthermore, this unmarked and hazardous condition creating a tripping hazard comprising an unseaworthy condition of the *M.V. Tarpon*. *See Mitchell v. Trawler Racer, Inc.*, 362 U.S. 539 (1960).

**C. Causation:**

35. Plaintiff would show that the above described incident was caused by the aforementioned negligence of the Defendants and/or the unseaworthiness of the *M.V. Tarpon*. The Defendants breached their legal duties and these breaches proximately caused damages and injuries to Plaintiff.

D**. Damages:**

36. Capt. Rivera incorporates paragraphs 1-35 as if fully set forth herein.

37. In the occurrence made the basis of this suit, Plaintiff Jay Rivera, sustained severe bodily injuries. Because of the nature and severity of the injuries sustained, Plaintiff has sustained physical pain and mental anguish in the past and in reasonable probability he will continue to suffer physical pain and mental anguish in the future. At the time of the occurrence made the basis of this suit, Plaintiff was a healthy able bodied working man, who was at the apex of his profession-a harbor pilot.

38. Plaintiff has and will suffer physical impairment and disfigurement. Because of the

occurrence in question, Plaintiff has sustained very painful and disabling physical injuries that have caused him to sustain a loss of earnings and wage earning capacity and household services in the past and this condition will exist into the future.

39. Because of the nature and severity of the injuries he sustained, Capt. Rivera has required medical treatment in the past and in reasonable probability will require other and additional medical treatment in the future. Charges for such medical treatment that have been made in the past and those which will in reasonable probability be made in the future have been and will be reasonable charges made necessary by the occurrence in question.

40. It is yet to early to ascertain the full extent of the damages sustained by Plaintiff but they are clearly within the jurisdictional limits of this Court. Considering Plaintiff's loss of earning capacity as an Aransas-Corpus Christ Pilot, as well as his lost retirement benefits due to his injuries suffered aboard the *M.V. Tarpon*, Plaintiff estimates his economic damages to be in excess of $1,000,000.00.

41. Plaintiff would additionally say and show that he is entitled to recovery of pre-judgment and post-judgment interest in accordance with law and equity as part of his damages herein and your Plaintiff here and now sues specifically for recovery of pre-judgment and post-judgment interest as provided by law.

## V.
## Conclusion

WHEREFORE, Jay Rivera, Plaintiff, prays that upon final trial and hearing

hereof Plaintiff recover his damages in accordance with the evidence, that he recover costs of Court herein, that he recover interest to which he is entitled under law, and for such other and further relief, general and special, legal and equitable to which he may show himself justly entitled

Respectfully submitted on April 10, 2017.

**Johnson & Crew, PLLC**

***/s/ Paxton N. Crew***
**Paxton N. Crew**
ATTORNEY-IN-CHARGE FOR
JAY RIVERA
SDTX 859147
TBA No. 24058720
Paxton@JohnsonCrewLaw.com
Christopher L. Johnson
SDTX 1050247
TBA No 24069999
Chris@JohnsonCrewLaw.com
305 East Main
League City, Texas 77573
Telephone 281-895-2410
Facsimile 409-263-1020