# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## GALVESTON DIVISION

| | | |
|---|---|---|
| Jay Rivera | § | |
|     Plaintiff, | § | |
| v. | § | |
| | § | |
| Kirby Corporation and | § | C.A. No. 3:17-00111 |
| Kirby Offshore Marine, LLC | § | |
|     *In personam* | § | 9(H) Admiralty |
| | § | |
| M.V. Tarpon | § | |
|     *In Rem* | § | |


## <u>KIRBY'S MOTION FOR SUMMARY JUDGMENT</u>


Respectfully submitted,


**JOHN K. SPILLER**
Federal ID No. 13993
**CLARK HILL STRASBURGER**
909 Fannin Street, Suite 2300
Houston, Texas 77010-1036
(713) 951-5600
(713) 951-5660 Fax
john.spiller@clarkhillstrasburger.com

**ATTORNEYS FOR DEFENDANT
KIRBY OFFSHORE MARINE, LLC**

**OF COUNSEL:**

**BIJAN R. SIAHATGAR**
Federal ID No. 13796
**CLARK HILL STRASBURGER**
909 Fannin Street, Suite 2300
Houston, Texas 77010-1036
(713) 951-5600
(713) 951-5660 Fax
Bijan.siahatgar@clarkhillstrasburger.com

# TABLE OF CONTENTS

I.    Summary of the Argument.................................................................................. 1

II.   Nature and Stage of Proceeding ....................................................................... 2

III.  Statement of the Issues and Standards of Review ............................................. 2

IV.   Factual Background......................................................................................... 3

    A.    Rivera's Employment. ............................................................................... 3

    B.    Rivera's Account of His Accident. ............................................................. 4

    C.    Rivera's Injury Allegations........................................................................ 5

    D.    Rivera's Claims Against Kirby. ................................................................. 5

V.    Argument ....................................................................................................... 5

    A.    The Evolution of Sieracki Seaman Status.................................................. 5

        1.    Sieracki Seaman Status Prior to the 1972 Amendments to the LHWCA ..................................................................................... 6

        2.    The 1972 LHWCA Amendments Abolished Sieracki Seaman Status under the LHWCA ................................................................ 6

    B.    Rivera is Not a Sieracki Seaman Because He is Not a Jones Act Seaman and His Claims Against Kirby are Covered by the LHWCA. ........ 7

        1.    Rivera is Not a Jones Act Seaman.................................................. 8

        2.    Rivera's Claims Against Kirby are Covered by the LHWCA ........... 9

        3.    Rivera Does Not Fall Within Exceptions to the LHWCA.................. 9

            (a)    Rivera is Not a "Master or Member of a Crew of a Vessel" ............................................................................. 10

            (b)    Rivera is Not a Texas State Employee or Officer ............... 10

        4.    Independent Contractor Status Does Not Exempt Rivera from LHWCA Coverage ........................................................................ 12

            (a)    The Fifth Circuit Ruled that the LHWCA Applies to Third-Party Claims of Independent Contractors Against Vessel Owners ....................................................... 13

            (b)    Other Courts, Including the Ninth Circuit, Have Likewise Found Independent Contractors to Be Subject to the LHWCA ....................................................... 14

          (c)    Rivera's Claim of an Independent Contractor Exception Rests Upon a 20 Year-Old Louisiana District Court Case of Questionable Validity ...................... 15

   C.    The LHWCA Provides Rivera's Exclusive Remedy Against Kirby. .......... 16

       1.    The Turnover Duty ........................................................................ 17

       2.    The Active Control Duty ............................................................... 18

       3.    The Duty to Intervene.................................................................. 18

VI.    Conclusion.......................................................................................................... 19

## KIRBY'S MOTION FOR SUMMARY JUDGMENT

Kirby Offshore Marine, LLC ("Kirby") files its Motion for Summary Judgment and would show the Court as follows:

## I.
## Summary of the Argument

Jay Rivera sued Kirby for injuries he claims to have sustained aboard a Kirby vessel in United States navigable waters. Rivera makes claims against Kirby as a *Sieracki*[1] seaman for unseaworthiness and additional claims for negligence and negligence per se. These claims are barred because the Longshore Harbor Workers' Compensation Act (LHWCA) provides Rivera's exclusive remedy against a third-party vessel owner such as Kirby. Kirby is entitled to judgment as a matter of law on Rivera's claims of unseaworthiness and negligence per se. Rivera's exclusive remedy of maritime negligence against Kirby is found under § 905(b) of the LHWCA and consists of three limited duties defined by the United States Supreme Court in *Scindia Steam Navigation Co. v. De Los Santos*, 451 U.S. 156 (1981): the turnover duty, the active control duty, and the duty to intervene. To the extent Rivera asserts claims of negligence beyond these three duties, those claims are barred as a matter of law. The Court should grant Kirby's motion for summary judgment and dismiss Rivera's claims against Kirby except those cognizable under § 905(b) of the LHWCA.

---

[1] *Sieracki* seaman status originates from *Seas Shipping Co. v. Sieracki*, 328 U.S. 85 (1946), as explained in more detail in Section V below.

3259179.1/SPH/10578/0537/050418

**II.**
**Nature and Stage of Proceeding**

Rivera originally filed this maritime personal injury suit against Kirby Corporation and Kirby Offshore Marine, LLC on April 10, 2017. (Doc. No. 1).  On August 2, 2017, the Court entered a Docket Control Order setting this case for trial on the Court's October 2018 trial docket.  Rivera filed his First Amended Complaint asserting new claims against Kirby Corporation and Kirby Offshore Marine, LLC on February 6, 2018. (Doc No. 23).

The Court conducted a Pre-Motion Conference on April 27, 2018.  (Doc No. 29).  The Court set a deadline of May 4, 2018 for Rivera and Kirby Offshore Marine to file motions for summary judgment. *Id.*

**III.**
**Statement of the Issues and Standards of Review**

Kirby's motion requires the Court to address two issues: 1) are Rivera's claims against Kirby governed by the LHWCA?; and 2) if the LHWCA governs Rivera's claims against Kirby, what remaining claims does Rivera have against Kirby?

This motion is governed by Federal Rule of Civil Procedure 56.  Under that rule, a party is entitled to summary judgment if it demonstrates that there is no genuine issue as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). The substantive law governing the suit identifies the essential elements of the claims at issue and therefore indicates which facts are material. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

2

Inquiries regarding classification under the LHWCA require the application of statutory standards to case-specific facts and are ordinarily mixed questions of law and fact. *See New Orleans Depot Servs. Inc. v. Dir., Office of Worker's Comp. Programs*, 718 F.3d 384, 387 (5th Cir. 2013). When the relevant facts are not in dispute, LHWCA coverage is an issue of statutory construction and legislative intent and is treated as a pure question of law. *Id.* Similarly, questions about the existence or scope of a vessel owner's duties to an independent contractor are questions of law. *Fontenot v. McCall's Boat Rentals, Inc.*, 227 Fed. Appx. 397, 401 (5th Cir. 2007).

## IV.
## Factual Background

**A.    Rivera's Employment.**

Rivera is a part owner of Aracor. *See* Deposition of Jay Rivera at p. 68:19-22, attached as Exhibit A ("Rivera dep."). Aracor is an operating company for the Aransas-Corpus Christi pilots. *Id.* at 59:21-24, 157:1-7. As an owner of Aracor, he is paid twice a month. *Id.* at 62:20-24. His payment is calculated as the gross receipts of Aracor minus expenses. *Id.* at 63:3-16. His Aracor payments are made to Riben Marine, a company of which he is the sole owner. *Id.* at 67:20-69:2. Aracor handles the invoicing for the services performed by Rivera. *Id.* at 61:18-62:13.

Rivera receives several other benefits through Aracor. Aracor provides a pension. *Id.* at 74:19-75:14. Following his accident, he received sick pay from

Aracor from August of 2016 until January or February of 2017. *Id.* at 140:25-141:10. The terms of the sick pay are governed by the Articles of Agreement of Aracor. *Id.* at 63:24-64:3. When his sick pay stopped, his work at Aracor resumed. *Id.* at 141:13-15. He received another stint of sick pay from Aracor starting in September of 2017. *Id.* at 64:4-9.

The medical expenses Rivera has incurred have been covered by an insurance company called Master, Mates and Pilots. *Id.* at 148:11-16. Also through Aracor he has long term disability coverage through an entity called UNUM. *Id.* at 64:22-65:6.

**B.** **Rivera's Account of His Accident.**

On August 19, 2016, Rivera was dispatched to pilot the M/V TARPON and its tow, barge DBL 76, from the Port Aransas sea buoy to Oil Dock # 11 in the Corpus Christi Harbor. *See* Plaintiff's First Amended Complaint at ¶¶ 10, 37. (Doc No. 23). He was not a member of the crew of the TARPON; but rather was there to assist in the navigation of the vessel. *Id.* at ¶ 39. He boarded the barge at or near the Port Aransas sea buoy at approximately 4:00 p.m. *Id.* at ¶ 11. Rivera proceeded from the stern of the barge to the rear of the house of the TARPON. *Id.* at ¶¶ 11-12. He entered the house through a watertight door/bulkhead. *Id.* at ¶ 14. He claims that as he stepped onto an engine room access hatch, he rolled his left foot and fell to the deck. *Id.* at ¶ 15. He continued to the wheelhouse of the TARPON. *Id.* at ¶ 16. He piloted the TARPON from the sea buoy to the Oil Dock # 11. *Id.* at ¶ 17.

**C. Rivera's Injury Allegations.**

After disembarking from the TARPON, Rivera sought treatment for his left foot. *Id.* at ¶ 19. An orthopedic surgeon diagnosed him as having a fracture of the fifth metatarsal of his left foot. *Id.* at ¶ 20. He returned to work on January 31, 2017. *Id.* at ¶ 21. After experiencing pain in his left foot, Rivera returned to the orthopedic surgeon, who conducted a bone scan that showed that the fifth metatarsal had not healed. *Id.* at ¶¶ 22-23. He underwent surgery to his left foot on September 7, 2017. *Id.* at ¶ 24. Rivera claims that continuing pain in his left foot prevents him from working as a mariner in any capacity. *Id.* at ¶ 27.

**D. Rivera's Claims Against Kirby.**

Rivera has asserted three claims against Kirby. First, Rivera claims that Kirby, as operator of the TARPON, owed duties to him which it violated in various respects. *Id.* at ¶¶ 30-35. Second, he alleges that he is a *Sieracki* seaman entitled to assert an unseaworthiness claim against Kirby as owner of the TARPON. *Id.* at ¶¶ 37-42. Finally, he makes a claim of negligence per se for alleged violations of various statutes. *Id.* at ¶¶ 44-52.

**V.**
**Argument**

**A. The Evolution of *Sieracki* Seaman Status.**

To evaluate Rivera's claim of *Sieracki* seaman status, it is necessary to review the origin and evolution of the *Sieracki* doctrine.

1.  *Sieracki* Seaman Status Prior to the 1972 Amendments to the LHWCA.

In 1946, the Supreme Court in *Seas Shipping Co., Inc. v. Sieracki*, 328 U.S. 85 (1946), provided non-Jones Act protected maritime workers who were covered under LHWCA, but who performed seaman duties, the additional remedy of unseaworthiness against vessel owners.  The Supreme Court later allowed the vessel owner to seek indemnity from the worker's employer based on the warranty of workmanlike service. *Ryan Stevedoring Co. v. Pan-Atlantic S.S. Corp.*, 350 U.S. 124, 131-32 (1955) (ship owner could seek indemnity when roll of pulp-board that had been stacked incorrectly by the stevedore fell on the stevedore's longshoreman). As a result, the employer of the longshoreman was potentially liable to the injured longshoreman for compensation and to the shipowner for indemnity, despite the provisions of the LHWCA, which limited an employer's liability to compensation payments. *Aparicio v. Swan Lake*, 643 F.2d 1109, 1113 (5th Cir. 1981).

2.  The 1972 LHWCA Amendments Abolished *Sieracki* Seaman Status under the LHWCA.

"Congress acted in 1972 … to eliminate the shipowner's liability to the longshoreman for unseaworthiness and the stevedore's liability to the shipowner for unworkmanlike service resulting in injury to the longshoreman in other words, to overrule Sieracki and Ryan." *Edmonds v. Compagnie Generale Transatlantique*, 443 U.S. 256, 260 (1979).  Congress enacted 33 USC § 905(b), providing a person with a negligence action against the vessel and expressly

eliminating the warranty of seaworthiness and precluding the vessel's attempts to seek indemnity from the longshore employer. *Aparicio*, 643 F.2d at 1116.

Following the 1972 amendments, the Fifth Circuit in *Aparicio v. Swan Lake* addressed to what extent *Sieracki* seaman status still survived. Aparicio, a harbor worker employed by the Panama Canal Company, was injured while handling vessel lines in the Panama Canal Zone. To determine whether Aparicio fell within the LHWCA, the Fifth Circuit first looked to the wording of the statute. "The statute itself must be our polestar, for it is black letter law that we do not search for latent intention if a legislative act is clear." *Id.* at 1116. The court found that the LHWCA did not cover Aparicio because he was a federal employee and his accident occurred outside of the geographic coverage of the LHWCA. *Id.* at 1114, 1116 n. 14. The Fifth Circuit reasoned that because the 1972 Amendments abrogated the *Sieracki* doctrine for workers who are covered by the LHWCA, those workers who fall outside of the LHWCA are still entitled to a *Sieracki* remedy. *Id.* at 1118.

**B.    Rivera is Not a *Sieracki* Seaman Because He is Not a Jones Act Seaman and His Claims Against Kirby are Covered by the LHWCA.**

For Rivera to qualify as a *Sieracki* seaman, he cannot be a Jones Act seaman <u>and</u> he must fall outside the coverage of the LHWCA. *Bridges v. Penrod Drilling Co.*, 740 F.2d 361, 364 (5th Cir. 1984). Rivera concedes he is not a Jones Act seaman. Because his incident occurred on United States navigable

waters, however, he falls within the scope of the LHWCA, precluding *Sieracki* status.

1.     Rivera is Not a Jones Act Seaman.

To qualify as a Jones Act seaman, Rivera must have a "connection to a vessel in navigation . . . that is substantial in terms of both its duration and its nature." *Chandris, Inc. v. Latsis*, 515 U.S. 347, 368 (1995).  Rivera admits that he was not a member of the crew of the M/V TARPON.  *See* Plaintiff's First Amended Complaint at ¶ 39 (Doc. No. 23).  Rivera further admitted that his work on the M/V TARPON was limited to piloting the vessel into the Corpus Christi harbor. *Id.* at ¶ 37.  Under circumstances virtually identical to this case, the Fifth Circuit rejected Jones Act status for a harbor pilot because he lacked substantial connection to the vessel.  *Bach v. Trident Steamship Co., Inc.*, 920 F.2d 322, 326 (5th Cir. 1991).  Indeed, upon remand to the Fifth Circuit after the *Latsis* decision, the Fifth Circuit stated that the Supreme Court's decision had no effect on its earlier conclusion, and the court confirmed its previous judgment that the harbor pilot was not Jones Act seaman. 947 F.2d 1290, 1291 (5th Cir. 1991), cert. denied, 504 U.S. 931 (1992).

3259179.1/SPH/10578/0537/050418

2. <u>Rivera's Claims Against Kirby are Covered by the LHWCA.</u>

Because Rivera's accident happened on United States navigable waters, his claims against vessel owner Kirby are governed by the LHWCA, rendering him ineligible to be a *Sieracki* seaman.

The LHWCA provides a federal recovery scheme to a wide range of maritime workers. *See* 33 U.S.C. § 901; *see also Howlett v. Birkdale Shipping Co., S.A.*, 512 U.S. 92, 96 (1994). The site of an injury is effectively the determinative factor as to whether a worker is covered under the LHWCA. *DOWCP v. Perini N. River Assocs.*, 459 U.S. 297, 300, 305 (1983). Section 903(a) of the LHWCA states "Except as otherwise provided in this section, compensation shall be payable under this Act in respect of disability or death of an employee, <u>but only if the disability or death results from an injury occurring upon the navigable waters of the United States</u> (including any adjoining pier, wharf, dry dock, terminal, building way, marine railway, or other adjoining area customarily used by an employer in loading, unloading, repairing, dismantling, or building a vessel)."(emphasis added). Because it is undisputed that Rivera's accident and claimed injury occurred on United States navigable waters, the LHWCA applies to his claims against Kirby. *See Perini*, 459 U.S. at 311-312.

3. <u>Rivera Does Not Fall Within Exceptions to the LHWCA.</u>

While there are limited exceptions to the scope of the LHWCA, they do not apply to Rivera. Specifically, Rivera is not a master or member of a crew excluded from coverage under 33 USC § 902(3)(G) nor is he a state or federal

9

employee or officer excluded from eligibility for compensation under 33 USC § 903(b).

### (a) Rivera is Not a "Master or Member of a Crew of a Vessel".

The LHWCA excludes coverage for a "master or member of a crew of any vessel". *See* 33 USC § 902(3)(G). Rivera admits that he was not member of the crew of the TARPON. *See* Plaintiff's First Amended Complaint at ¶ 39 (Doc. No. 23). The Supreme Court held that the Jones Act and the LHWCA provide mutually exclusive compensation regimes, such that the term "master or member of a crew" is identical to the term "seaman" for Jones Act purposes, observing "indeed, 'it is odd but true that the key requirement for Jones Act coverage now appears in another statute.'" *Chandris, Inc. v. Latsis*, 515 U.S. at 355-56; *see also McDermott Int'l, Inc. v. Wilander*, 498 U.S. 337, 347 (1991); *Harwood v. Partredereit AF 15.5.81*, 944 F.2d 1187, 1191-92 (4th Cir. 1991) (holding that compulsory pilot was not a "master or member of a crew" as that term was defined by 33 USC § 902(3)(G).

### (b) Rivera is Not a Texas State Employee or Officer.

Although not listed among the exclusions found within 33 USC § 902(3), the LHWCA denies coverage for disability of an officer or employee of the United States or of any State or subdivision thereof. Rivera is not a federal or state employee. Rivera is a part owner of Aracor, the operating company for the Aransas-Corpus Christi pilots. *See* Rivera dep. at 59:21-24, 68:19-22, 157:1-7 (Exhibit A). His Aracor draw payments are made to Riben Marine, a company of

which he is the sole owner.  *Id.* at 67:20-69:2.  He derives numerous employment benefits – medical insurance, pension, sick pay, and disability insurance – through Aracor.  *See* Section IV(A) at pp. 3-4 above.

Rivera argues that his commission as a branch pilot makes him an officer of the State of Texas.  It is well-settled in Texas that a state-commissioned pilot is not an officer of the State of Texas or the United States.  The Galveston court of appeals addressed whether a branch pilot[2] such as Rivera was a state officer. *Houston Pilots v. Goodwin*, 178 S.W.2d 308 (Tex. Civ. App. – Galveston 1944, writ dism.) In finding that a branch pilot was not a state officer, the Goodwin court held:

> In Texas the license issued to pilot is issued to him as 'branch pilot' of a particular port. And such license is referred to in the statutes as though it were a commission which invests such branch pilot with an office. Art. 8270, et seq., relating to pilots of seaports; Art. 8248, et seq., relating to pilots of ports of navigation districts. <u>The language of such statutes is misleading, for the 'commission', which licenses a pilot to practice pilotage as the branch pilot of a particular port, is merely a certificate of competence, and does not differ in character from certificates of competence required of lawyers or doctors before they are permitted to practice law or medicine. All the pilots involved in this case hold federal licenses under authority of which they practice the pilotage regulated by federal law, and because such federal authorization is expressly called a license there seems to be no misconception that the holder thereof is a federal officer, rather than a mere licensee</u>. As was said in *Moody v. Megee*, 5 Cir., 41 F.2d 515: 'All states have the right to license pilots for waters in their territorial jurisdiction * * * . It is not usual to require a bond of a pilot as the prerequisite to the issuance of a license, but in this case it is difficult to conjecture what official duties are intended to be covered by the bond. None are imposed by the laws of Texas. A pilot's license is a certificate of competence***. In piloting a vessel he is not

---

[2] Rivera is considered a "branch pilot" under Tex. Trans. Code § 70.036.

discharging any official duty. He is acting merely in a private capacity as a servant of her owner.'

*Id.* at 311-12 (emphasis added).

The issue of whether a branch pilot was a state officer was revisited in 1975. The Texas Legislature considered whether to change the duration of the pilot commission from two years to four years. The Chairman of the Senate Jurisprudence Committee asked the Texas Attorney General, John Hill, whether extending the commission would violate the requirements of the Texas Constitution that the duration of state offices shall not exceed two years. The Texas Attorney General, citing *Goodwin*, advised that "Given the clear language of the Court of Civil Appeals, it is our conclusion that a branch pilot does not hold a public office." *See* Letter Advisory No. 88 attached as Exhibit B.

4. <u>Independent Contractor Status Does Not Exempt Rivera from LHWCA Coverage.</u>

Kirby anticipates that Rivera will argue that he does not fall within the LHWCA because he is an independent contractor. The Fifth Circuit specifically rejected this argument and recognized that the LHWCA applies to independent contractors' third-party claims against vessel owners. *Prestenbach v. Global Int'l Marine, Inc.*, 244 Fed. Appx. 557 (5th Cir. 2007). Several others courts, including the Ninth Circuit, have likewise confirmed that there is not an independent contractor exception to coverage under the LHWCA. *Ghotra v. Bandila Shipping*, 113 F.3d 1050 (9th Cir. 1997); *Cordes v. M/V Baldock*, 2013 U.S. Dist. LEXIS 45714 (D. Mass. Mar. 29, 2013).

(a) **The Fifth Circuit Ruled that the LHWCA Applies to Third-Party Claims of Independent Contractors Against Vessel Owners.**

In *Prestenbach*, a marine transportation company hired Prestenbach, a self-employed worker, to raise a sunken barge.  Despite Prestenbach's request, the marine transportation company did not provide him insurance coverage or a W-4 form.  *Prestenbach*, 244 Fed. Appx. at 558-59.  He injured himself lifting a heavy hose and sued the marine transportation company under the Jones Act and under the LHWCA.  *Id.* at 559.  The district court dismissed his claims on summary judgment. *Id.*

The Fifth Circuit affirmed the dismissal of Prestenbach's claims.  *Id.* at 561.  Significantly, Prestenbach made the same argument as Rivera, namely that he is a *Sieracki* seaman who can assert a claim for unseaworthiness.  *Id.* at 561 n.3.  The Fifth Circuit found his argument "without merit." *Id.*  The court noted that the LHWCA specifically applied to independent contractors' claims against vessel owners.  *Id.* at 560, 561 n.3.  Additionally Prestenbach was a "person" within the meaning of § 905(b) of the LHWCA entitled to recover for injuries caused by the negligence of a vessel.  *Id.* at 561 n.3.

3259179.1/SPH/10578/0537/050418

### (b) Other Courts, Including the Ninth Circuit, Have Likewise Found Independent Contractors to Be Subject to the LHWCA.

The Ninth Circuit ruled that the LHWCA applies to independent contractor claims against vessel owners, using the same reasoning as the Fifth Circuit in *Prestenbach*. In *Ghotra v. Bandila Shipping*, 113 F.3d 1050 (9th Cir. 1997), the Ninth Circuit rejected a plaintiff's argument that he did not fall within the LHWCA because he was self-employed. *Id.* at 1059. The Ninth Circuit noted that the LHWCA's definition covered "any person engaged in maritime employment" and did not include any requirement that the employee be employed by a separate "employer" entity. *Id.* The fact that the worker was unable to recover against an employer did not take him out of the LHWCA. *Id.*

Another federal district court likewise concluded that a harbor pilot was covered under the LHWCA. *Cordes v. M/V Baldock*, 2013 U.S. Dist. LEXIS 45714 (D. Mass. Mar. 29, 2013). The *Cordes* court observed that the pilot met the situs and status requirements under the LHWCA sufficient to bring him within the Act. The *Cordes* court found that the pilot's independent contractor status did not exclude him from the LHWCA. The court pointed out that a self-employed pilot may avail himself of a cause of action against a third party under 33 USC § 905(b).

3259179.1/SPH/10578/0537/050418

### (c) Rivera's Claim of an Independent Contractor Exception Rests Upon a 20 Year-Old Louisiana District Court Case of Questionable Validity.

Rivera's authority for an independent contractor exception to the LHWCA is a 20 year-old Louisiana district court opinion, *Blancq v. Hapag-Lloyd A.G.*, 986 F. Supp. 376 (E. D. La. 1997). *Blancq* has never been cited by the Fifth Circuit or any court within the Fifth Circuit regarding the issue of whether there is an independent contractor exception to the LHWCA. A closer examination of *Blancq* shows that neither Fifth Circuit precedent nor the wording of the LHWCA support its holding.

The plaintiff in *Blancq*, a river pilot, was injured while climbing a Jacob's ladder. *Id.* at 377. He sued the vessel owner, asserting that because he was neither a Jones Act seaman nor entitled to the benefits of the LHWCA, he was a *Sieracki* seaman. *Id.* at 378. In determining whether the pilot fell within the LHWCA, the court looked solely at the pilot's employment status. *Id.* at 382. Without reference to any provision of the LHWCA[3] or Fifth Circuit precedent, the *Blancq* court found that treating a pilot injured on navigable waters as falling under the LHWCA was problematic for two reasons. First, it was inconsistent with the "original purpose"[4] of the LHWCA. *Id.* at 382. Second, because the pilot

---

[3] The court's refusal to review the wording of the LHWCA contradicted the approach used by the Fifth Circuit in determining LHWCA coverage . *See New Orleans Depot Servs. Inc.*, 718 F.3d at 387 (holding that LHWCA coverage is an issue of statutory construction); *see also Aparicio*, 643 F.2d at 1116. ("The statute itself must be our polestar, for it is black letter law that we do not search for latent intention if a legislative act is clear.")

[4] The court's reliance on the "original purpose" of the LHWCA is curious in light of the court's recognition that the LHWCA was amended in 1972 to give it "expansive breadth". *Id.* at 381.

was self-employed, the only statutory right the LHWCA would provide was an action in negligence against the vessel owner. *Id.* The court stated, "Given plaintiff's unique employment status and in the absence of Fifth Circuit authority to the contrary, this Court concludes that it is consistent with the purposes behind the LHWCA and general maritime law to exclude a river pilot from coverage under the LHWCA." *Id.*

*Blancq's* precedential value is questionable in light of subsequent Fifth Circuit authority such as *Prestenbach*. *Prestenbach* directly refuted the reasons cited by *Blancq* for excluding independent contractors from LHWCA coverage. First, the Fifth Circuit specifically noted that 33 USC § 905(b) of the LHWCA covered independent contractors. *Prestenbach*, 244 Fed. Appx. at 561. Second, even if the plaintiff was not an "employee" under the LHWCA, he was nevertheless a "person" covered within 33 USC § 905(b) of the LHWCA. *Id.* at 561 n.3. Third, the LHWCA applied to the plaintiff even if his remedy under the Act was limited to a third-party negligence claim against the vessel owner. *Id.*

## C.     The LHWCA Provides Rivera's Exclusive Remedy Against Kirby.

The right of persons covered by the LHWCA to sue a vessel owner for negligence arises exclusively under 33 U.S.C. § 905(b). ("The remedy provided in this subsection shall be exclusive of all other remedies against the vessel except remedies available under this Act.")

The duties of a vessel owner to maritime workers working aboard vessels are governed by the principles enunciated by the United States Supreme Court in

16

*Scindia Steam Navigation Co. v. De Los Santos*, 451 U.S. 156 (1981). *Scindia* outlines three limited and narrow duties owed by vessel owners: (1) the "turnover duty," which relates to the condition of the ship upon the commencement of the contractor's operations; (2) the "active control duty," which requires a vessel owner to prevent injuries to workers in areas remaining under the "active control" of the vessel; and (3) the "duty to intervene," which concerns the vessel's obligation in areas under the principal control of the contractor. *Moore v. Angela MV*, 353 F.3d 376, 380 (5th Cir. 2003) (*citing Howlett v. Birkdale Shipping Co.*, 512 U.S. 92, 98 (1994)). A "basic principle" behind each of these duties is that the independent contractor, rather than the vessel owner, who bears the primary responsibility for its employees' safety. *See Scindia*, 451 U.S. at 172.

1. <u>The Turnover Duty.</u>

The turnover duty applies to "the shipowner's obligation before or at the commencement of the stevedore's activities." *Kirksey v. Tonghai Mar.*, 535 F.3d 388, 392 (5th Cir. 2008) (emphasis added). This duty places two responsibilities on the vessel owner. First, the owner owes a duty to exercise ordinary care under the circumstances to turn over the ship and its equipment in such a condition that an expert stevedore can carry on his stevedoring operations with reasonable safety. *Id.* Second, the vessel must warn the stevedore of latent or hidden dangers that are known or should have been known to the vessel in the exercise of due care. *Id.* Yet, the vessel's responsibility to warn of latent defects is narrow. It does not apply to dangers that are open and obvious or that a

17

reasonably competent stevedore should anticipate encountering. *Howlett*, 512 U.S. at 99-100 (*quoting Scindia*, 451 U.S. 167).

2. The Active Control Duty.

A vessel owner has "active control" over an area of the ship and retains primary responsibility for the safety of workers in that area if: (1) the vessel's crew retained substantial control over the area; or (2) the vessel's crew substantially interfered, by invitation or otherwise, with the contractor's exercise of exclusive control by actively intervening in the area. *Scindia*, 451 U.S. at 167. For there to be an "active control duty," "the vessel must exercise active control over the actual methods and operative details" of the independent contractor's work. *Dow v. Oldendorff Carriers GMBH & Co.*, 387 F. App'x 504, 507 (5th Cir. 2010) (per curiam). Liability under the active control duty requires a "hazard" under the active control of the vessel. *Pimental v. LTD Canadian Pacific Bul.*, 965 F.2d 13, 16 (5th Cir. 1992).

3. The Duty to Intervene.

To prevail on a claim that the vessel breached the duty to intervene, the maritime employee must show not only that the shipowner had actual knowledge of the hazard and of the longshoreman's continuing hazardous operations, but also (1) that the vessel owner had actual knowledge that the hazard posed an unreasonable risk of harm, <u>and</u> (2) that the vessel owner had actual knowledge that it could not rely on the stevedore to protect its employees and that if

unremedied the condition posed a substantial risk of injury. *See Greenwood v. Societe Francaise De*, 111 F.3d 1239, 1245 (5th Cir.1997).

## VI.
## Conclusion

Defendant Kirby Offshore Marine, LP requests that this Court grant its Motion for Summary Judgment and enter judgment dismissing Plaintiff Jay Rivera's claims as a *Sieracki* seaman, including any claim for unseaworthiness, dismissing any claim by Rivera for negligence per se, and limiting Rivera's claims against Kirby to the three duties enumerated under *Scindia*, namely the turnover duty, active control duty, and the duty to intervene.

Respectfully submitted,

*/s/John K. Spiller*
**JOHN K. SPILLER**
Federal ID No. 13993
**CLARK HILL STRASBURGER**
909 Fannin Street, Suite 2300
Houston, Texas 77010-1036
(713) 951-5600
(713) 951-5660 Fax
john.spiller@clarkhillstrasburger.com

**ATTORNEYS FOR DEFENDANT
KIRBY OFFSHORE MARINE, LLC**

**OF COUNSEL:**

**BIJAN R. SIAHATGAR**
Federal ID No. 13796
**CLARK HILL STRASBURGER**
909 Fannin Street, Suite 2300
Houston, Texas 77010-1036
(713) 951-5600
(713) 951-5660 Fax
Bijan.siahatgar@clarkhillstrasburger.com

## CERTIFICATE OF SERVICE

I hereby certify and affirm that on May 4, 2018, that the foregoing document was served on all known counsel of record pursuant to the Federal Rules of Civil Procedure.

Paxton N. Crew          Via e-mail: Paxton@thecrewlawfirm.com
The Crew Law Firm
305 East Main
League City, Texas 77573


*/s/John K. Spiller*
John K. Spiller

3259179.1/SPH/10578/0537/050418