**In the United States District Court
For the Southern District of Texas
Galveston Division**

| | | |
|---|---|---|
| **Jay Rivera** | § | |
|     Plaintiff, | § | 3:17-cv-111 |
| | § | |
| v. | § | |
| | § | 9(H) Admiralty |
| **Kirby Offshore Marine, LLC** | § | |
|     *In personam* | § | |
| **M.V. Tarpon** | § | |
|     *In Rem* | § | |

**Plaintiff Jay Rivera's
Second Amended Complaint**

**To the Honorable Judge George C. Hanks, Jr.:**

Comes Now, Captain Jay Rivera ("Capt. Rivera" or "Plaintiff") and files this his second amended complaint against *in personam* defendant Kirby Offshore Marine, LLC and against *in rem* defendant *M.V. Tarpon* and would respectfully show the court as follows:

**I.
Jurisdiction & Venue**

This is an admiralty and maritime claim within the meaning of Article III, Section 2 of the United States Constitution; 28 U.S.C. §§ 1331, 1333; and rule 9(h) of the Federal Rules of Civil Procedure. Venue is proper in this district as Defendants have availed themselves of this district by directing its vessels to the ports of Galveston County, Texas, and the injuries to Plaintiff occurred while on board the *M.V. Tarpon*

1

while the vessel was in the territorial waters offshore Corpus Christi, Texas, which is located in this judicial district. Furthermore, Defendant Kirby Offshore Marine, LLC's headquarters are located in this judicial district. The Defendants have answered this suit and have appeared herein.

## II.
## Parties

1. Plaintiff Capt. Jay Rivera is an individual Citizen of the State of Texas who currently resides at 16101 Cuttysark St. Corpus Christi, TX 78418, which is within this District.

2. *In Personam* Defendant Kirby Offshore Marine, LLC is a foreign limited liability company which regularly engages in business in the state of Texas and maintains its headquarters in Houston, at 55 Waugh Drive, Suite 1000, Houston, Texas 77007, and may be served with process with its registered agent, Corporation Service Company d/b/a CSC-Lawyers Incorporating Service Company at 211 E. 7th Street, Suite 620 Austin, Texas 78701-3136. Kirby Offshore Marine, LLC has appeared and is represented by counsel.

3. *In rem* Defendant *M.V. Tarpon* (official number D556953, IMO No. 7390923) may be found wherever she is afloat. The operator of the *M.V. Tarpon,* Kirby Offshore Marine, LLC has appeared on behalf of the vessel and has stipulated that it is the responsible party for the *in rem* unseaworthiness allegations contained herein.

# III.
# Background Facts

## A.  Captain Jay Rivera – Aransas Corpus-Christi Pilot

5. Capt. Rivera is an Aransas-Corpus Christi Pilot and is licensed by the United States Coast Guard as a First Class Pilot and holds a commission from the State of Texas to conduct compulsory pilotage to vessels calling on Nueces County. *See generally* TEX. TRANSP. CODE 70.001 *et seq*.

6. Capt. Rivera has maintained his Texas pilotage commission for twelve years. In order to serve as a Texas state pilot, Capt. Rivera is also required to pass a U.S. Coast Guard annual physical and maintain a United States Coast Guard merchant mariner credential. *See* TEX. TRANSP. CODE § 61.011(a).

7. As part of Capt. Rivera's responsibilities as an Aransas-Corpus Christ Pilot, he is responsible for protecting the natural resources of the state of Texas by providing navigational guidance to the captains of the vessels who are required to use pilots aboard their vessels.

8. Due to the injury made the basis of this case, Capt. Rivera is now physically incompetent to act as a Pilot under his U.S. Coast Guard issued First Class Pilot Endorsement, and consequently, cannot act as a compulsory pilot in accordance with Chapter 60 of the Texas Transportation Code. Capt. Rivera has failed his most recent physical examination and is, more likely than not, never going to be able to pass the merchant mariner physical examination in the future. Therefore Capt. Rivera will be

forced to relinquish his state pilot commission and, more likely than not, will be unable to regain his physical competence to hold a U.S. Coast Guard merchant mariner credential as required by Texas Transportation Code § 61.011.

### B. M.V. Tarpon/DBL 76

9. The *M.V. Tarpon*, official number D556953, IMO No. 7390923, is a seagoing towing vessel which comprises an articulated tug/barge unit ("ATB") when the vessel is affixed to, or "in the notch" of, tank barge DBL 76 (or other similar barges).

10. On August 19, 2016, Capt. Rivera was dispatched to bring the ATB from the Port Aransas sea buoy to Oil Dock #11.

11. At approximately 4:00 p.m., Capt. Rivera boarded the ATB offshore Port Aransas from the pilot boat. As he had done thousands of time before, he boarded the vessel by climbing up the pilot ladder and onto the deck of the barge DBL 76. He was met by an able bodied seaman ("AB") Charles Hudgins who was apparently on his first hitch aboard the ATB. The AB then escorted Capt. Rivera to the stern of the barge where they both climbed down a set of inset ladder rungs built into the barge's skin, and onto the deck of the *M.V. Tarpon*.

12. Capt. Rivera was then escorted to the rear of the house of the *M.V. Tarpon*, where he was required to enter the interior of the *M.V. Tarpon* by climbing over a raised bulkhead and through a watertight door. At this time, the escort went ahead of Capt. Rivera into the interior of the wheelhouse, and left him behind—unescorted. A

4

true and correct photograph of the entrance to the *M.V. Tarpon's* house, or "fiddly" is shown below as well as a photograph of the bulkhead and engine room access hatch on the interior of the house.



Photograph of the *M.V. Tarpon* "fiddly"



Photograph of the bulkhead and engine room access hatch

13. As Capt. Rivera climbed over the bulkhead, making use of the exterior and interior steps, he then stepped down onto the engine room access hatch.

14. Unbeknownst to Capt. Rivera, the edges of the engine room access hatch, which were not marked with any type of yellow tape or paint warning of its hazard, were raised from the deck approximately one to two inches. The AB also failed to warn Capt. Rivera of this hazard and was not present to prevent him from falling or to assist him over the watertight door/bulkhead.

15. As Capt. Rivera stepped onto the engine room access hatch, his left foot landed on the raised outer edge of the engine room access hatch and his foot rolled off that raised edge causing him to fall to the deck. Capt. Rivera immediately felt a pop in his left foot but he believed he had simply rolled his ankle.

16. Capt. Rivera lay there in distress until the escort returned and assisted him to his feet. Although he was in severe pain at the time, Capt. Rivera believed he could complete the task of bringing the vessel safely into port.

17. Upon arriving in the wheelhouse, Capt. Rivera informed the master of the *Tarpon* of his injury, and complained about the raised and unmarked deck area. Capt. Rivera asked for some ice for his rapidly swelling foot. He then made the transit from the sea buoy to Oil Dock #11 with ice on his foot, and in extreme pain.

18. Throughout the three hour transit, Capt. Rivera began to become more and more concerned that this was something more than a simple ankle sprain.

19. After completing the docking evolution, Capt. Rivera became concerned that he would not be able to safely disembark the vessel, and so he asked the line handlers who were assisting in mooring the vessel to help him off the *Tarpon* and to carry him to his vehicle. Capt. Rivera then travelled to the Bay Area Hospital emergency room where he received X-rays.

20. Concerned that the extent of the damage could be permanent, Capt. Rivera was then seen by an orthopedic specialist, Dr. Dawn Grosser, at South Texas Bone & Joint

7

who diagnosed Capt. Rivera with a fracture of the fifth metatarsal of his left foot.

21. As a result of the injury, Capt. Rivera was required to wear an air-boot and use a bone growth stimulator. Capt. Rivera, who is required by the United States Coast Guard to maintain physical competency to act as a pilot, was rendered physically incompetent as a result of his injury aboard the *M.V. Tarpon* on August 19, 2016.

22. Following the initial treatment, Dr. Grosser released Capt. Rivera to return to work on January 31, 2017 with the assistance of a carbon-fiber orthopedic insert. However, Capt. Rivera began to experience severe pain in his foot, and returned to consult with Dr. Grosser about his pain.

23. Dr. Grosser conducted a bone scan on Capt. Rivera's left foot which revealed that the fifth metatarsal had not healed, and a surgery would be required.

24. Surgery was performed on Capt. Rivera's left fifth metatarsal on September 7, 2017, and although the surgery appears to have repaired the bone, Capt. Rivera began experiencing numbness and pain in his foot which causes him distress and uncertainty with his balance.

25. As a result of this chronic and lingering pain in his left foot, Capt. Rivera consulted with neurologist Dr. Randolph Evans on December 28, 2017.

26. Dr. Evans opined that Capt. Rivera suffers from Complex Regional Pain Syndrome (CPRS), which upon information and belief is a permanent condition the treatment of which will render Capt. Rivera physical incompetent to hold a U.S.

Merchant Mariner Credential and to act as a state compulsory pilot in Texas.

27. As a result of Capt. Rivera's medical condition he is now physically incompetent to act, not only as a harbor pilot, but as a mariner in any capacity because he cannot complete his U.S. Coast Guard required physical examination.

28. Capt. Rivera presented for his annual coast guard physical examination on June 20, 2018 whereupon Dr. Thomas Moloney found him physically incompetent to act as a U.S. Coast Guard Merchant Mariner. The National Maritime Center has likewise found that Capt. Rivera is medically unfit to operate under the authority of his merchant mariner credential.

29. Capt. Rivera is seeking damages as a result of the negligence and unseaworthiness of Kirby Offshore Marine, LLC and the *M.V. Tarpon*.

## IV.
## Claims:

### A. Negligence:

30. Capt. Rivera incorporates paragraphs 1-29 as if fully set forth herein.

31. On August 19, 2016 Kirby Offshore Marine, LLC, as the operator of the *M.V. Tarpon*, was responsible for providing a safe means of ingress and egress to Capt. Rivera, and owed the duty of reasonable care under the circumstances.

32. Before the requirement for vessels to have a ship security plan, it was a well-established maritime custom to provide escorts to pilots from the deck to the

navigation bridge on arrival and from the navigation bridge to the deck on departure of the pilot. With the requirements for vessels such as the *M.V. Tarpon* to maintain a ship security plan, the escort custom became law. *See* 33 CFR § 101.

33. Kirby provided an untrained seaman to escort Capt. Rivera to the wheelhouse, and who failed to inform Capt. Rivera of the raised engine room access hatch that he would have to transition over, and ultimately left him unescorted as he transitioned through the Fiddly. Leaving Capt. Rivera unescorted was a violation of the ship's security plan and industry standards.

34. Additionally, Kirby failed to sufficiently mark the hazard of the raised engine room access hatch cover with contrasting paint or yellow tape which is also the industry standard.

35. Kirby, by and through the crew members aboard the *M.V. Tarpon*, neglected to warn Capt. Rivera of the dangerous and hidden nature of the raised engine room access hatch cover, and warn him of those dangers, and as a result, Capt. Rivera fell and was injured.

36. Furthermore, the escort provided by Kirby failed to accompany Capt. Rivera through the boarding evolution, which was a violation of the vessel's safety management system, and shipboard security plan.

    **B.**     **Unseaworthiness-*Sieracki* Seaman:**

37. Capt. Rivera incorporates paragraphs 1-36 as if fully set forth herein.

38. At the time of Capt. Rivera's injury, he was aboard the *M.V. Tarpon* to perform pilotage services and to conn the vessel from the sea buoy to Oil Dock #11.

39. Pilotage is a traditional maritime activity that is critical to the safe navigation of ocean going ships and requires the localized knowledge of a duly licensed pilot to safely conn the vessel past the shoals, reefs and other submerged hazards in the ship channel.

40. Compulsory pilots, such as Capt. Rivera, are not members of the crew of the vessel, but assist in the mission and safe navigation of the vessel and are considered to be the equivalent of the captain while on board the vessel.

41. Due to the relationship of Capt. Rivera to the *M.V. Tarpon*, the vessel (and its owners) owed to him the duty of a seaworthy ship under the doctrine of seaworthiness. *See Seas Shipping Co., Inc. v. Sieracki*, 328 U.S. 85 (1946).

42. The *M.V. Tarpon* was unseaworthy as that term is understood at law as the engine room access hatch cover was defectively designed, or engineered, or marked in such a way to not appraise anyone transiting it of its inherent danger, creating an unsafe condition aboard the vessel. Furthermore, this unmarked and hazardous condition created a tripping hazard comprising an unseaworthy condition of the *M.V. Tarpon*. *See Mitchell v. Trawler Racer, Inc.,* 362 U.S. 539 (1960).

43. Coupled with the defective access hatch is the lack of any handrails sufficient for anyone to use to stabilize themselves upon entering the house of the *M.V. Tarpon*,

and therefore compounding the defective access hatch.

### D. Section 5(b) claim under the Longshore and Harbor Worker's Compensation Act.

44. Plaintiff incorporates Paragraphs 1-43 as if fully set forth herein..

45. In the alternative, should the Court rule that Plaintiff is a Longshoreman as argued by Kirby Offshore Marine, LLC, Plaintiff makes this claim under 33 U.S.C. § 905(b) against Kirby Offshore Marine, LLC as the owner/operator of the *M.V. Tarpon* in the alternative without waiving any position that Capt. Rivera was a master *pro hac vice* of the Tarpon at the time of his injury.

46. At the time of Plaintiff's injury, the entire vessel was under the active control of Defendant and had not been turned over.

47. Plaintiff was lawfully aboard the vessel to provide navigation assistance to the vessel.

48. As set forth above, Plaintiff was injured by an unmarked, uneven engine room access hatch cover that was in the primary passageway in the ship.

49. Plaintiff was unaware of, and was not warned of, the trip and fall hazard presented by the uneven walkway surface.

50. Because the vessel was under the active control of Kirby, open and obvious conditions are no defense. *Pimental v. LTD Canadian Pacific Bul*, 965 F.2d. 13, 16-17 (5th Cir. 1992).

51. In the event that Plaintiff is deemed to be a longshoreman, Kirby was required to keep the walkway surfaces he used safe for those using them, including Plaintiff.

52. Kirby's failure to, among other things: keep the walkway free of tripping hazards; ensure safe ingress and egress from walking areas; inspect and repair walkway surfaces; and failing to guard or warn of the hazard presented by the raised and uneven engine room access hatch, constitutes negligence as that term is understood at law.

53. Kirby Offshore Marine, LLC was negligent in failing to warn Capt. Rivera of the tripping hazard, failing to mark it as a tripping hazard in accordance with industry standard, and failing to correct the uneven walking surface and that negligence was the proximate cause of Capt. Rivera' injuries.

    **E.**    **Negligence *Per Se***

64. Plaintiff incorporates paragraphs 1-63 as if fully set forth herein.

65. The *M.V. Tarpon* is an American flagged towing vessel which is classified by the American Bureau of Shipping (ABS).

66. Under ABS' classification requirements, the *Tarpon* is categorized as a "Cargo Ship" for purposes of the International Convention for Safety of Life at Sea (SOLAS).

67. The United States has adopted Chapter IX of SOLAS, which covers the Safe Operation of Ships and for Pollution Prevention. *See* 33 CFR § 96.100.

68. Among other things, the vessel failed to promulgate a proper Safety

Management System which addresses escorting pilots such as Capt. Rivera and identifying and remedying trip and fall hazards, such as the unmarked hatch cover. The vessel also failed to provide handrails and a safe passageway as required by 46 C.F.R. § 42.15-75(d).

69. Escorting of pilots to and from the wheelhouse is required under SOLAS regulation twenty-three, and the failure to incorporate a protocol in Kirby Offshore Marine, LLC's SMS, and in fact, the utter lack of any policy on this whatsoever is a violation of the International Ship Management Code (ISM) regulations (46 USC §§ 3202, 3203(a), as well as SOLAS.

70. Furthermore, the *M.V. Tarpon* also lacked handrails as required by 46 C.F.R. § 42.15-75(d) which provides for the protection of the crew in having a satisfactory means or access to the various working parts of the *M.V. Tarpon*.

71. As a compulsory pilot, Capt. Rivera was within the class of people intended to benefit from these regulations, namely having a safe means of walking within the ship.

72. A trip and fall is the type of injury a handrail, safe walkway surface policies, and safety policies identifying trip and fall hazards are intended to prevent.

73. The violation of the foregoing U.S. Coast Guard regulations are all unexcused, and these violations proximately caused Capt. Rivera's injuries and therefore constitute negligence *per se*. *Kernan v. Amer. Dredging Co.*, 355 U.S. 426, 78 S. Ct. 394 (1958); *Reyes v. Vantage S.S. Co.*, 609 F.2d. 140 (5th Cir. 1980).

### F: Causation

74. Plaintiff would show that the above described incident was caused by the aforementioned negligence and negligence *per se* of the Defendants and/or the unseaworthiness of the *M.V. Tarpon*. Defendant owed and breached duties to Capt. Rivera and those breaches proximately caused damages and injuries to Plaintiff.

75. Because Kirby failed to maintain a proper and complete SMS manual and to comply with SOLAS Regulation 23, these amount to a violation of a rule intended to prevent the accident in question, and therefore Plaintiff invokes the Rule of the *Pennsylvania*, 86 U.S. (19 Wall.) 125, 136, (1873). Accordingly, Kirby must show that the violation of the escort policy and failure to have a sufficient trip and fall hazard identification procedure could not have been the cause of the injury could not have been the cause of his injury. *Id.*

### G. Damages:

76. Capt. Rivera incorporates paragraphs 1-75 as if fully set forth herein.

77. In the occurrence made the basis of this suit, Plaintiff Jay Rivera, sustained severe bodily injuries. Because of the nature and severity of the injuries sustained, Plaintiff has sustained physical pain and mental anguish in the past and in reasonable probability he will continue to suffer physical pain and mental anguish in the future. At the time of the occurrence made the basis of this suit, Plaintiff was a healthy able bodied working man, who was at the apex of his profession: a harbor pilot.

78. Plaintiff has and will suffer physical impairment and disfigurement. Because of the occurrence in question, Plaintiff has sustained very painful and disabling physical injuries that have caused him to sustain a loss of earnings and wage earning capacity and household services in the past and this condition will exist into the future.

79. Because of the nature and severity of the injuries he sustained, Capt. Rivera has required medical treatment in the past and in reasonable probability will require other and additional medical treatment in the future. Charges for such medical treatment that have been made in the past and those which will in reasonable probability will be made in the future have been and will be reasonable charges made necessary by the occurrence in question.

80. Considering Plaintiff's loss of earning capacity as an Aransas-Corpus Christ Pilot, as well as his lost retirement and lost pension benefits due to his injuries suffered aboard the *M.V. Tarpon*, Plaintiff estimates his economic damages to be in excess of $15,000,000.00.

81. Plaintiff would additionally say and show that he is entitled to recovery of pre-judgment and post-judgment interest in accordance with law and equity as part of his damages herein and your Plaintiff here and now sues specifically for recovery of pre-judgment and post-judgment interest as provided by law.

# V.
# Conclusion

WHEREFORE, Jay Rivera, Plaintiff, prays that upon final trial and hearing hereof Plaintiff recover his damages in accordance with the evidence, that he recover costs of Court herein, that he recover interest to which he is entitled under law, and for such other and further relief, general and special, legal and equitable to which he may show himself justly entitled

Respectfully submitted this 16th day of August, 2018.

**The Crew Law Firm, P.C.**

*/s/ Paxton N. Crew*
**Paxton N. Crew**
ATTORNEY-IN-CHARGE FOR
JAY RIVERA
SDTX 859147
TBA No. 24058720
303 E. Main, Suite 260
League City, Texas 77573
Paxton@thecrewlawfirm.com
Telephone 713-955-0909
Facsimile 409-908-4050